*Appeal No. 14-1153*

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### FOR THE FEDERAL CIRCUIT

➤➤◄◄

SHELLY CONTE, CINDY REICHMAN,

*Plaintiffs-Appellants,*

*v.*

JAKKS PACIFIC, INC.,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court
for the Eastern District of California,
Court No. 1:12-cv-00006
Honorable Lawrence J. O'Neill, Judge*

## BRIEF FOR DEFENDANT-APPELLEE

Jonathan Honig
FEDER KASZOVITZ LLP
845 Third Avenue, 11th Floor
New York, New York 10022
212-888-8200

William Thomas McLaughlin, II
LANG, RICHERT & PATCH
5200 North Palm Avenue, Suite 401
P.O. Box 40012
Fresno, California 93755
559-228-6700

*Attorneys for Defendant-Appellee*

Form 9

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SHELLY CONTE and CINDY REICHMAN v. JAKKS PACIFIC, INC.

No. 14-1153

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Jonathan Honig_____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:
JAKKS PACIFIC, INC.

---

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
JAKKS PACIFIC, INC.

---

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
The following Private companies own 10% or more of the stock of Appellee:
Invenco, Ltd. and California Capital Z, LLC
No publicly traded company owns 10% or more of the stock of Appellee.

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

William T. McLaughlin, II, Esq., Lang, Richert & Patch, 5200 North Palm Avenue, Suite 401, Fresno, California 93704 (559) 228-6700

January 10, 2014
Date

_Signature of counsel_
Jonathan Honig
Printed name of counsel

Please Note: All questions must be answered
cc: Lenden F. Webb, Esq.

---

# Table of Contents

**Page**

I. STATEMENT OF RELATED CASES ................................................................1

II. STATEMENT OF JURISDICTION ................................................................1

III. STATEMENT OF ISSUES ................................................................2

IV. STATEMENT OF THE CASE ................................................................3

    A. The Nature of the Case ................................................................3

    B. The Course of Proceedings ................................................................5

V. STATEMENT OF THE FACTS ................................................................5

    A. The '457 Patent ................................................................5

    B. The Care Bear Toy ................................................................7

VI. SUMMARY OF ARGUMENT ................................................................12

VII. ARGUMENT ................................................................14

    A. The Standard of Review ................................................................14

    B. The District Court Was Correct In Finding The '457 Patent Invalid ................................................................15

    C. The Court's Finding of Non-Infringement Was Correct ................................................................23

        1. There is No Direct Infringement ................................................................24

            (a) The Legal Standard ................................................................24

            (b) Application of the Legal Standard ................................................................25

        2. There Is No Infringement By Way of Equivalents ................................................................28

            (a) Legal Standard ................................................................28

      (b)    The Care Bear Products Do Not Function
In The Same Manner As The '457 Patent ......................29

          (i)    Function.................................................................29

          (ii)   Manner.................................................................30

          (iii)  Result..................................................................30

D.    The District Court Properly Rejected
Conte's Triple Overtime Motion for Leave to Amend ......................31

CONCLUSION ........................................................................................33

# Table of Authorities

**Cases**                                                                                      **Page**

*Abbott Laboratories v. Sandoz, Inc.*,
    566 F.3d 1282 (Fed. Cir. 2009) ............................................................ 28

*Allergan, Inc. v. Sandoz Inc.*,
    __F.3d__, 2013 WL 1810852 (Fed. Cir. May 1, 2013) .................... 14

*Anderson v. City of Bessemer City*,
    470 U.S. 564 (1985)........................................................................ 14

*Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc.*,
    1993 WL 129781 (E.D. Cal. Mar. 10, 1993)..................................... 24

*Brocade Communications Systems, Inc. v. A10 Networks, Inc.*,
    873 F. Supp. 2d 1192 (N.D. Cal. 2012)............................................. 28

*Cooter & Gell v. Hartmarx*,
    496 U.S. 384 (1990)................................................................. 15, 32

*Cybor Corp. v. FAS Technologies, Inc.*,
    138 F.3d 1448 (Fed. Cir. 1998) ............................................................ 15

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
    849 F.2d 1430 (Fed. Cir. 1988) ............................................................ 19

*Foman v. Davis*,
    371 U.S. 178 (1962)........................................................................ 15

*Graham v. John Deere Co. of Kansas City*,
    383 U.S. 1 (1966)................................................................... 15, 22

*In re Circuit Breaker Litig.*,
    175 F. R. D. 547 (C.D. Cal. 1997)..................................................... 32

*Johnston v. IVAC Corp.*,
    885 F.2d 1574 (Fed. Cir. 1989) ............................................................ 24

*KSR Int'l v. Teleflex, Inc.*,
    550 U.S. 398 (2007)........................................................... *passim*

*Lighting Ballast Control LLC v. Philips Electronics North America Corp.*,
 7:09 CV 29-0, 2010 WL 4946343 (W.D. Tex. Dec. 2, 2010, *rev'd*, 498 Fed. App'x. 986 (Fed. Cir. 2013), *withdrawn*, 500 Fed. App'x 951 (Fed. Cir. 2013), 2014 WL 667499 (Fed. Cir. Feb. 21, 2014) (*en banc*) ...................... 1, 15

*Nazomi Communications, Inc. v. Nokia Corp.*,
 2013 WL 3146796 (N.D. Cal. Jun. 18, 2013) .................................. 28

*Panduit Corp. v. Dennison Mfg. Co.*,
 810 F. 2d 1561 (Fed. Cir. 1987) ......................................... 15

*Personalized Media Communications, LLC v. Int'l Trade Comm'n*,
 161 F.3d 696 (Fed. Cir. 1998) ............................................. 22

*Reeves Instrument Corp. v. Beckman Instruments, Inc.*,
 444 F.2d 263 (9th Cir. 1971) ................................................ 23

*SAES Getters P.p.A.v. Aeronex, Inc.*,
 219 F. Supp. 2d 1081 (S.D. Cal. 2002) ............................... 32

*Sanofi-Aventis Deutschland GMBH v. Genetech, Inc.*,
 2011 WL 839411 (N.D. Cal. Mar. 11, 2011), *aff'd*, 473 Fed. Appx. 885, 890 (Fed. Cir. 2012)............................. 28

*Takeda Pharm. Co. v. Impax Laboratories, Inc.*,
 2013 WL 2384240 (N.D. Cal. May 30, 2013) ................................. 24

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
 723 F.3d 1363 (Fed. Cir. July 26, 2013) ........................................ 1

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
 520 U.S. 17 (1997)...................................................... 28

*Watts v. XL Sys., Inc.*,
 232 F.3d 877 (Fed. Cir. 2000) .......................................... 20

## Rules and Statutes:

35 U.S.C. §112 ........................................................... 22

Fed. R. Civ. P. 52(a)(6)................................................... 14, 15

iv

## I.     STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Jakks Pacific, Inc. ("Jakks")

states as follows:

(a)     There have been no previous appeals in this case.

(b)     Jakks is aware of no other case that will be directly affected by the

Court's decision in this case.  It is possible that Supreme Court review of the

Court's *en banc* decision in *Lighting Ballast Control LLC v. Philips Electronics*

*North America Corp.*, 7:09 CV 29-0, 2010 WL 4946343 (W.D. Tex. Dec. 2, 2010,

*rev'd*, 498 Fed. App'x. 986 (Fed. Cir. 2013), *withdrawn*, 500 Fed. App'x 951 (Fed.

Cir. 2013), 2014 WL 667499 (Fed. Cir. Feb. 21, 2014) (*en banc*), will directly

affect this Court's decision.  It is also possible that Supreme Court review of the

Court's decision in *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.,* 723 F.3d 1363

(Fed. Cir. July 26, 2013), will directly affect this Court's decision.

## II.     STATEMENT OF JURISDICTION

This case involves the invalidity of United States Patent No. 6,494,457 (the

"'457 Patent") issued to Conte and Reichman (collectively, "Conte") and non-

infringement of the '457 Patent by Jakks' Care Bear products.  The district court

had jurisdiction pursuant to 28 U.S.C. §§1331 and 1338(a).

On November 5, 2013, the district court issued its Order (the "Order") on

Motions for Summary Judgment and Motion for Leave to Amend the First

1

Amended Complaint, granting Jakks' Motion for Summary Judgment as to the causes of action in the first amended complaint and denying Conte's Motion for Summary Judgment as to the causes of action in the first amended complaint and denying with prejudice Conte's motion for leave to amend the first amended complaint and Judgment was entered in accordance with the Order.  A1-19; A20.

A stipulation for dismissal of Jakks' counterclaims was filed on December 6, 2013.  A1695.  On that date, the court ordered, based on the parties' stipulation, that the entirety of the counterclaims of Jakks were dismissed and closed the action.  A1695.

On December 4, 2013, Conte timely filed a Notice of Appeal.  A1694. Pursuant to Fed. R. App. P. 4(a)(2), the Notice of Appeal is deemed to be filed on December 6, 2013.  The Federal Circuit has jurisdiction of this appeal under 28 U.S.C. §1295(a)(1).

### III.    STATEMENT OF ISSUES

•      Did the district court properly find that an "analysis of the *Graham* factors shows by clear and convincing evidence that the Plaintiffs' patent as to Claim 9's "calculating means" element is obvious" such that "the '457 patent as to that element is invalid"?  A11.

2

•       Did the district court properly find that Jakks' "Care Bear toy does not literally infringe on and has substantial differences in function from Claim 9" of the '457 Patent?  A13.

•       Did the district court properly exercise its discretion in denying with prejudice Conte's motion for leave to amend the operative Complaint?  A18.

## IV.     STATEMENT OF THE CASE

### A.     The Nature of the Case

The '457 Patent in suit was issued on December 17, 2002.  A2.  The patent, "ENHANCED HIDE AND SEEK GAME AND METHOD OF PLAYING GAME," is based on an application filed July 25, 2001.  A1696.  The application fails to disclose the following prior art references:  U.S. Patent 5,135,165 to Benson ("Benson"); U.S. Patent 6,162,123 to Woolston ("Woolston"); U.S. Patent 6,484,021 to Hereford ("Hereford"); U.S. Patent 6,344,797 to Hosny ("Hosny"); U.S. Patent 5,673,035 to Huang ("Huang"); U.S. Patent 5,525,967 to Azizi ("Azizi"); U.S. Patent 4,935,907 to Friedman ("Friedman"); U.S. Patent 4,660,039 to Barricks ("Barricks"); and U.S. Patent 4,528,566 to Tyler ("Tyler"). Declaration of Richard Klar, dated August 30, 2013 (the "Klar Decl.") ¶5.  A250.

The "enhancement" disclosed by the '457 Patent to traditional hide and seek games, as set forth in the patent's Abstract, is that the handheld electronic device (the "Finder Unit") "determines the distance between the object and the participant

before and after the participant moves," and uses that information "to determine whether the participant is moving closer to or further away from the object." Declaration of Garry Kitchen dated August 30, 2013 (the "Kitchen Decl.) ¶¶9, 80. A269. The '457 Patent discloses "an enhanced game of hide and seek where the game participant searches for a hidden object having a transmitter device inside or attached to the object." Kitchen Decl. ¶15. A258. "The game participant utilizes a Seeker Unit that determines the distance between the object and the participant before and after the participant moves. The Seeker Unit uses that information to determine whether the participant is moving closer to or further away from the object and then communicates useful information to the game participant to assist the participant in finding the object." Kitchen Decl. ¶16. A258. The three independent claims of the '457 Patent all include the disclosure of functionality to measure a first and second distance and employ a calculating means to compare the two distances to determine whether the participant is moving closer to or further away. Kitchen Decl. ¶17. A258.

The Care Bear stuffed bear doll that is the subject of the action consisted of (1) a plush toy doll capable of being hidden; (2) a transmitting device attached to the toy doll; and (3) a seeker unit capable of receiving various clues depending on its proximity to the toy doll. A2.

The issues in the case were patent invalidity pursuant to 35 U.S.C. §103 and non-infringement.

## B.    The Course of Proceedings

Jakks' Answer to the first amended complaint ("FAC") asserted counterclaims.  A43-55.  Conte moved to dismiss the counterclaims; that motion was denied and Conte thereafter replied to the counterclaims.  A1689-90.  The Judgment dated November 5, 2013 (A20) became final on December 6, 2013 when, based on the stipulation of the parties, the counterclaims were dismissed. A1695.

## V.    STATEMENT OF THE FACTS

## A.    The '457 Patent

The three independent claims of the '457 Patent all include the disclosure of functionality to measure a first and second distance and employ a calculating means to compare the two distances to determine whether the participant is moving closer to or further away from the hidden object.  Kitchen Decl. ¶17.  A258.

Claim 1 discloses "A method of playing an enhanced hide and seek game using a seeker unit to search for an object having a transmitter unit, comprising the steps of:  (a) activating said transmitter unit associated with said object; (b) placing said object in a hidden location; (c) activating said seeker unit; (d) transmitting a signal between said transmitter unit and said seeker unit; (e) determining a first

distance between said seeker unit and said transmitter unit; (f) determining a second distance between said seeker unit and said transmitter unit; (g) comparing said second distance to said first distance to determine a change in distance and whether said second distance is greater or less than said first distance; (h) communicating a game message from said seeker unit to the game participant regarding said change in distance; and (i) repeating steps d through f until said object is found."  A1703-4.

Claim 7 discloses "A method of playing an enhanced hide and seek game using a seeker unit to search for an object having a transmitter unit, comprising the steps of:  (a) activating said transmitter unit associated with said object; (b) placing said object in a hidden location; (c) activating said seeker unit; (d) transmitting a signal between said transmitter unit and said seeker unit; (e) determining a first distance between said seeker unit and said transmitter unit; (f) moving said seeker unit from a first position to a second position by the game participant prior to the step of determining said second distance; (g) initiating a position request on said seeker unit after determining said first distance; (h) determining a second distance between said seeker unit and said transmitter unit; (i) comparing said second distance to said first distance to determine a change in distance and whether said second distance is greater or less than said first distance; (j) communicating a game

message from said seeker unit to the game participant regarding said change in distance; and (k) repeating steps d through j until said object is found." A1704.

Claim 9 discloses "An enhanced hide and seek game, comprising: an object capable of being hidden; a transmitter unit associated with said object, said transmitter unit configured to transmit a signal generally outward from said object; and a seeker unit associated with the game participant, said seeker unit having a receiver therein for receiving said signal from said transmitter unit; said seeker unit comprising a calculating means for determining a first distance between said seeker unit and said object, a second distance between said seeker unit and said object and a relative change in distance, said seeker unit further comprising a speaker for transmitting one or more messages to the game participant wherein after said object is hidden and said transmitter unit is activated, the game participant utilizes said seeker unit to find the location of said object by receiving said messages from said speaker." A1704.

## B.    The Care Bear Toy

The Care Bear dolls function as follows:

Game play begins when the power is turned on both on the bear and the Finder Unit; the participant presses a button on the Finder Unit indicating that he or she is ready to begin; and another person hides the bear and presses a button on the bear indicating that it is ready to be found. Kitchen Decl. ¶¶27-29. A261.

7

During game play, the Finder Unit generates one of 15 separate phrases based on the criteria set forth below. *Id.* ¶30. A261. The Finder Unit continuously generates the phrases until the hidden bear is found, in which case a "success" message is played, or until the game times out after 7 minutes and 15 seconds. *Id.* ¶¶ 31-33. A261-62.

During game play, the transmitter inside the bear outputs a continuous stream of radio frequency bursts at a fixed amplitude. Kitchen Decl. ¶¶35, 37. A262. The radio receiver in the Finder Unit is tuned to receive the transmission if it is in range to receive it. *Id.* ¶35. A262. The receiver in the Finder Unit has a discriminator wired into the speech generation daughter board that is sensitive to signal, and is configured to output two distinct pulse signals. *Id.* ¶37. A262. The "FW" and "BW" signals cause the daughter board attached to the discriminator to output a series of pulses, of either zero or four volts, depending on the strength of the signal it receives, with the "FW" activated within a radius of approximately 25 feet, while the "BW" output is activated only within a foot or two of the transmitter. *Id.* ¶¶37-38. A262.

Based on the input received, the discriminator signals the speech generator circuit to output a subset of the 15 phrases as follows: At 25 feet, the discriminator, whose output is represented by the "FW" signal, generates no output, and the speech generator randomly generates one of 7 phrases indicating

that the participant is far away from the hidden bear.  Kitchen Decl. ¶¶40, 51-53.

A263-65.  This is because at that distance, the radio signal from the bear is of

insufficient strength to exceed the circuit's threshold, so no pulses are detected.  *Id.*

¶40.  A263.  At distances of less than 25 feet (but more than 1 to 2 feet), the "FW"

signal is generated by the discriminator, and the speech generator randomly

generates one of 5 phrases indicating that the participant is close to the hidden

bear.  *Id.* ¶¶41-43, 53.  A263, 265.  At distances of 1 to 2 feet, the discriminator

activates both the "FW" and "BW" signals, and causes the speech generator to

exclaim "Hurray, you found me!"  *Id.* ¶¶44-45, 56.  A263, 265.  At this point, the

game is over, and although the Finder Unit continues to receive signals from the

bear, the speech generator is disabled until the game is reset and the participant

begins to play anew.  *Id.* ¶¶49-50.  A264.  Alternatively, the speech generator

becomes disabled when the game times out after 7 minutes and 15 seconds of play,

when it generates a failure message and invites the participant to reset the game

and begin again.  *Id.* ¶¶31-32, 55.  A261, 265.

Thus, in contrast to the technology disclosed by the '457 Patent, which

measures the distance between the Finder Unit and hidden object in two places so

that the difference between the measurements can be calculated by use of a

"calculating means," the Care Bear products are configured to determine only 3

distance ranges:  (1) FAR: No pulses appear on either the "FW" or "BW" signal

lines.  (2) NEAR: Pulses appear on the "FW" signal line but not on "BW".

(3) CLOSE PROXIMITY: Pulses appear on both "FW" and "BW" signal lines.

Kitchen Decl. ¶46.  A263-64.

If the bear is placed at a range of 25 feet line-of-sight or greater, the FAR

range, the speech generator plays a continuous stream of phrases chosen from

among the following list:  (1) "I'm hiding, come find me."  (2) "Hey, can you find

me?"  (3) "I found a great hiding place."  (4) "You'll never guess where I am."

(5) "Heeheehee, you're cold."  (6) "Are you still looking?"  (7) 'Heeheehee, where

are you?"  Kitchen Decl. ¶52.  A264-65.  These 7 messages are repeated over and

over in a random sequence.  *Id.* ¶53.  A265.  As long as the bear remains in the

FAR range, the phrases generated will be at random, and without regard to the

previous phrase and without regard to a change in distance within the FAR range.

*Id.* ¶¶53, 59-60.  A265-66.

If the bear is placed inside the range of 25 feet line-of-sight, the NEAR

range, the speech generator plays a continuous stream of randomly generated

phrases chosen from among a different list:  (1) "Oh, oh, I think you might find

me."  (2) "You're really, really, warm."  (3) "You're getting warmer."  (4)

"Heeheehee, this is so much fun."  (5) "Wow, you're good at this game."  Kitchen

Decl. ¶54.  A265.  As in the case of the FAR range messages, while in the NEAR

range, these 5 messages are repeated over and over in a random sequence, and

without regard to the previously generated phrase or to the movement of the Finder Unit within the Near range. *Id.* ¶¶55, 59-60. A265-66. If the Finder Unit is placed within one or two feet of the bear, the CLOSE PROXIMITY range, speech generator will play the "found me" phrase and end the game. *Id.* ¶56. A265.

The phrases generated by the Care Bear products are based solely upon the actual, current signals received by the Finder Unit, and a separate, independent measurement of signal strength is taken before each phrase is generated, which measurement has nothing to do with the previous measurement, or the phrase generated in connection therewith. Kitchen Decl. ¶59. A265. Indeed, moving the bear and Finder Unit from the NEAR range into the FAR range, and from the FAR range into the NEAR range, will switch the subset from which the random phrases are chosen, but will have no effect on the order of generation of either subset, such that the participant cannot, relying on the phrases generated by the Finder Unit, discern whether he or she is getting closer to or moving farther away from the object as long as he or she remains in the same NEAR or FAR range. *Id.* ¶¶59, 64-77. A265-68. This is because the Finder Unit has no ability to take and remember multiple range measurements and, through a calculating means, compare them in order to make a determination of whether the seeker is getting closer or farther. *Id.* ¶¶60, 76. A266, 268. Nor do the Care Bear products have memory capability to allow them to employ a calculating means by which to determine the relative

11

change in distance between a first determination of distance and a second

determination of distance, as claimed in the '457 Patent, because, at the time of any

given measurement, they cannot "remember" what the previous measurement was.

*Id.* ¶¶60, 76-77.  A266, 268.  The Care Bear products' system only "knows" the

proximity of the receiver to the transmitter at an instant in time, but it does not

"know" if it was previously closer to or farther away.  *Id.* at ¶83.  A269.  In other

words, the system determines a range of proximity at an instant in time, but does

not determine a change in distance over time.  *Id.*  A269.

## VI.    SUMMARY OF ARGUMENT

The FAC was properly dismissed because the application for the '457 Patent

failed to disclose numerous prior art references which, to a person reasonably

skilled in the art, would render the claims of the '457 Patent obvious.  As found by

the district court, the '457 Patent is invalid pursuant to 35 U.S.C. §103, rendering

Plaintiffs' claims for relief non-actionable.

In addition, the district court properly held that Jakks' Care Bear products do

not infringe the '457 Patent because the technology that enables them is

fundamentally different from that disclosed in the '457 Patent.  Specifically, the

claims of the '457 Patent cover an invention that "enhances" the traditional game

of hide and seek by enabling the participant, through the use of the Finder Unit to

receive clues as to the whereabouts of a hidden object, whereby the Finder Unit

takes a first measurement (of distance between the hidden object and the Finder Unit), a second measurement, and by the use of a calculating means, determines the change in relative distance. The Finder Unit will then give the participant useful information with respect to the location of the hidden object based on the calculated change in relative distance.

The Care Bear products, in contrast, generate clues based on three distinct ranges of distance between the hidden object and the Finder Unit based on a single measurement at a given point in time; they do not perform two measurements and do not use a calculating means to determine a change in relative distance. Similarly, the "clues" given by the Care Bear products' Finder Unit are based on a single determination of proximity (repeated numerous times during game play), and reflect the absolute range of proximity rather than a change in relative distance. The clues given by the Care Bear products' Finder Unit are generated independently each time, and without reference to any previous measurement.

Because the Care Bear products function in a manner that is completely different from the technology disclosed in the claims of the '457 Patent, the district court properly found, as a matter of law, that the Care Bear products do not infringe the '457 Patent directly or by way of equivalents, and dismissed the FAC for this reason as well.

13

Finally, faced with a motion for leave to amend the FAC (1) which was filed long after discovery had closed; (2) which was filed long after summary judgment motions had been filed; (3) that would defy the court's scheduling order and prejudice Jakks; and (4) that involved an amendment that would be futile, the district court properly refused leave to amend with prejudice.

## VII.    ARGUMENT

### A.    The Standard of Review

Obviousness is a question of law, reviewed *de novo*, based upon underlying factual questions, which are reviewed for clear error. *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398 (2007); *Allergan, Inc. v. Sandoz Inc*., __F.3d__, 2013 WL 1810852, at *4 (Fed. Cir. May 1, 2013). The underlying factual considerations in an obviousness analysis are "the scope and content of the prior art"; "differences between the prior art and the claims are issue"; and "the level of ordinary skill in the pertinent art." Also present as secondary considerations are "commercial success, long felt but unsolved needs, failure of others, etc." *KSR, supra*, at 406.

For patent infringement, an appellate court may set aside the district court's factual findings if they are "clearly erroneous." Fed. R. Civ. P. 52(a)(6). The United States Supreme Court defined this in *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985), where it held "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of

appeals may not reverse it even though convinced that had it been sitting as the trier of fact it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[1] As to a district court's denial of leave to amend a complaint, the appellate court reviews the denial under an abuse of discretion standard such that it is to be affirmed if it falls "within a broad range of permissible conclusions." *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 400 (1990); *Foman v. Davis,* 371 U.S. 178, 182 (1962).

**B.    The District Court Was Correct In Finding The '457 Patent Invalid**

The test for finding a patent invalid for obviousness was set forth in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).  *Accord KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007).[2]  Conte's reliance on *Panduit Corp. v. Dennison Mfg. Co.,* 810 F. 2d 1561 (Fed. Cir. 1987), (App. Br. at 12), is misplaced because, as set forth in *KSR*, the standard is set forth in § 103 and involves a

---

[1]    While this Court reaffirmed *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) in *Lighting Ballast v. Philips Electronics, supra*, with respect to the standard of review of claims construction and that is assumed to apply here, we are informed that this decision will be appealed to the Supreme Court because of the tension between that holding and Fed. R. Civ. P. 52(a)(6), and if *certiorari* is granted, a more deferential standard of review may be adopted.

[2]    As in *KSR*, *supra*, the presumption of validity is heavily undermined where, as here, prior art is not submitted to the PTO.

review of "differences between the prior art and the claims at issue." Here, as in *KSR*, *supra*, at 407, where the "content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors, summary judgment is appropriate."

The district court applied that test and correctly found that the '457 Patent is invalid pursuant to 35 U.S.C. §103 based on one of the several prior art references (Friedman) not cited to and not considered by the examiner during the prosecution of the '457 Patent.[3] A386-668. The district court set forth the Friedman Patent claim (A8) and held that "On its face, the technology claimed in the 1988 Friedman patent appears to cover the invention claimed in the "calculating means" element of [Conte's] Claim 9." A9.

In this appeal, Conte argues, without reference to *KSR, supra*, that the district court's reliance on Claim 9 is in error. *Cf.* App. Br. at 12-22. The district court made exactly the required comparison between the prior art and the claims in issue. A8-11. As was stated in *KSR, supra,* at 407:

---

[3]    These prior art references are: US Patent Nos. 5,131,165 to Benson; 6,162,123 to Woolston; 4,935,907 to Friedman; 6,484,021 to Heresford; 6,344,797 to Hosny; 5,673,035 to Huang; 5,525,967 to Azizi; 4,660,039,039 to Barricks; and 4,528,566 to Tyler.  A386-668.

16

> [T]he results of ordinary innovation are not the subject of exclusive rights under the patent laws.  Were it otherwise, patents might stifle, rather than promote, the progress of useful arts.  *See* U.S. Const., Art. I, §8, cl. 8.  These premises led to the bar on patents claiming obvious subject matter established in *Hotchkiss* and codified in §103.

The Supreme Court concluded based thereon that where there is convincing evidence that combining two design features "was a design step well within the grasp of a person of ordinary skill in the relevant art", the claim in issue was obvious.  *Id*.

Contrary to Conte's claim that the district court "grounded its analysis on the faulty premise that only two prior art patents were at issue in connection with the issuance of the '457 Patent" (App. Br. at 13), the Court properly relied on the Friedman prior art and the claims in the patent in issue.  A8-11.

Without basis, Conte states: ""The Friedman Patent is Grounded on Wholly Different Technology" (App. Br. at 14), and "it is evident that Claim 1 of the Friedman patent does not disclose the elements of Claim 9 of the '457 Patent, including does not cover the calculating means element."  App. Br. at 15.  However an analysis of the references cited by the court indicates that when viewed as a whole each and every element of the claim language of the '457 Patent is met by these references.

Claim 9 of the '457 Patent is the only claim of the '457 Patent to recite any means-plus-function language and such language is only recited in its reference to calculating means. Claim 9 recites (A1704):

> 9. An enhanced hide and seek game, comprising:
>
> an object capable of being hidden;
>
> a transmitter unit associated with said object, said transmitter unit configured to transmit a signal generally outward from said object; and
>
> a seeker unit associated with the game participant, said seeker unit having a receiver therein for receiving said signal from said transmitter unit; said seeker unit comprising a calculating means for determining a first distance between said seeker unit and said object, a second distance between said seeker unit and said object and a relative change in distance, said seeker unit further comprising a speaker for transmitting one or more messages to the game participant;
>
> wherein after said object is hidden and said transmitter unit is activated, the game participant utilizes said seeker unit to find the location of said object by receiving said messages from said speaker.

While Conte claims that the transmitter unit and the receiver of the '457 Patent and the use of radio waves distinguish it from Friedman (App. Br. at 15-16), this is meritless because the transmitter in independent claims 1, 7 and 9 is recited as an apparatus or structure and not couched in means-plus-function language. These limitations are not limited to any particular type of technology. Similarly the receiver or seeker unit which includes calculating means in Claim 9 is only recited

as an apparatus or structure and it is clear that the "limitations from the specification are not to be read into the claims." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir. 1988).

Moreover, the transmitter and the seeker unit are not disclosed in the specification as having any particular technology, but rather reference known prior art technology US Patents 4,495,357; 5,686,887; 4,285,158; 4,496,149; and 5,204,657. Thus any one of these references could be combined with Friedman to invalidate the claims of the '457 Patent.

In short, the distinction that Conte is relying on is admitted prior art which in combination with Friedman would invalidate Claim 9 of the '457 Patent by Conte's own admissions.

Furthermore, Woolston, Benson , Heresford, Hosny, Huang, Azizi, Barricks, and Tyler, references cited by Jakks in its summary judgment motion for invalidity (A386-668), and listed in footnote 3 above, each disclose the use of radio frequency and in combination with Friedman would also invalidate the '457 Patent claims including Claim 9.  *Cf.* App. Br. at 16.

As for the means-plus-function language of the calculating means in Claim 9 of the '457 patent, the only embodiment mentioned in the specification of the '457 patent of the calculating means is a microprocessor.  Col. 3, lines 46-67.  A1701.

Means-plus-function claims apply only to purely functional limitations that do not provide the structure that performs the recited function. *Watts v. XL Sys., Inc.,* 232 F.3d 877, 880-81 (Fed. Cir. 2000). Here the calculating means does not pertain to the transmitter unit or the seeker unit, but only to calculations. These calculations are defined in the specification as being accomplished with a microprocessor A1701 (Col. 3, lines 46-67).

The Friedman Patent discloses a handheld mobile unit and has a programmed digital microchip computer that generates an internal representation of the distance between the receiving transducer and a selected remote module from the time measured between the transmission of a request signal and the receipt of a response signal. The computer compares subsequent representations of the distances to determine if the mobile unit is moving closer or farther away from the selected remote module. The mobile module includes an indicator to indicate to the user whether the distance to the selected remote module is increasing or decreasing as the mobile module is moved. The calculating means feature of Claim 9 of the '457 Patent is thus fully disclosed or suggested by Friedman. A9-10.

Conte also contends that Claim 1 of the Friedman Patent recites a different calculating element; however this does not focus on the fact that the technology relied upon is in the transmission/receiving units and not the calculating means.

20

Further, one skilled in the art does not only look at one or more claims of a reference for invalidity, but rather within the four corners of the reference to see if there is disclosure that teaches or suggests the claimed invention. Friedman discloses that "The computer compares subsequent representations of the distances to determine if the mobile module is moving closer to or farther away from the selected remote module. The mobile module includes an indicator for indicating to the user whether the distance to the selected remote module is increasing or decreasing as the mobile module is moved." A554 (Col. 1, lines 60-66). Thus it is clear that Friedman discloses or suggests providing a calculating means that compares subsequent representations of the distances to determine if the mobile module is moving closer to or farther away from the selected remote module and whether the distance to the selected remote module is increasing or decreasing as the mobile module is moved. Both use a computer /microprocessor to make these calculations.

Furthermore, the district court relied upon Friedman, Hosny and also US Patent 6,311,982 to Lebensfeld (cited in the '457 Patent) for invalidating the '457 patent. As stated by the district court "The Lebensfeld patent relates to a 'hide and find toy game' using wireless transmitter and receiver technology" (A8). Thus one skilled in the art would have modified the hide and find game of Lebensfeld

employing the wireless transmitter and receiver technology with the calculating means of either Friedman or Hosny to invalidate the claim of the '457 Patent.

In short, here as in *KSR*, the prior art renders the '457 Patent obvious and the patent cannot stand based on the language of §103 and the policy underlying it in favor of novel inventions and not "ordinary innovation." The district court's analysis is consistent with *Graham* and *KSR*.

Conte also contests the district court's analysis of the secondary *Graham* factors. Contrary to Conte's claim that "the district court did not make findings as to the level of ordinary skill in the art" (App. Br. at 18), the Court found that because the '457 Patent was more rudimentary than the prior art, the level of ordinary skill in the art in connection with the prior art supported the conclusion of obviousness because the '457 Patent was more rudimentary than the prior art. A11.

Conte also argues that the Hosny patent is less sophisticated because it does not employ a CPU. App. Br. at 19-20. It is well known that a recitation in means-plus-function language must be supported by the described embodiments of the specification or its equivalents. 35 U.S.C. §112 ¶6; *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 703 (Fed. Cir. 1998). As previously noted, the calculating means are described as a microprocessor. A1701 (Col. 3, lines 46-67). Instead of a CPU the Hosny patent discloses a

sophisticated equivalent which includes logic circuitry that serves to detect and determine the location of an object.   A528 (Col. 5, lines 5-39).

Further, Hosny can be combined with Woolston which discloses the use of a computer to invalidate the claims of the '457 Patent.

Finally, Conte's argument based on combining prior art with a known method of using a transmitter (App. Br. at 20) cannot withstand the admonition in *KSR* that a "design step well within the grasp of a person of ordinary skill in the relevant art" will not pass muster.  *KSR*, not *Reeves Instrument Corp. v. Beckman Instruments, Inc.*, 444 F.2d 263 (9th Cir. 1971), (App. Br. at 20), provides the framework for this analysis and the district court properly carried out that mandate and found that, contrary to Conte's position, a "number of modern variations of the game of hide and seek have been developed and/or patented to incorporate modern electronic technology into devices to be used to play the game" (A10), and that Friedman teaches such a game as well.  A11.

Accordingly, it is respectfully submitted that the district court was correct in invalidating the claims of the '457 Patent on obviousness grounds pursuant to §103.

## C.   The Court's Finding of Non-Infringement Was Correct

The court below found that the Care Bear products "allow the user to locate the hidden object by alerting the user when the user crosses a boundary of

23

predetermined distance from the object" while the '457 Patent "allows the user to locate the hidden object by informing the user whether the user has moved closer to or farther away from the hidden object whenever the user moves.".  A13. Accordingly, the court held that the Care Bear "does not literally infringe on and has substantial differences in function from Claim 9 of Plaintiffs' patent."  A13. This holding should be affirmed.

### 1.    There is No Direct Infringement

### (a)    The Legal Standard

It is black letter law that to "establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent."  *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989); *Baltimore Therapeutic Equip. Co. v. Loredan Biomedical, Inc.*, 1993 WL 129781 at *3 (E.D. Cal. Mar. 10, 1993).  "An accused infringer is entitled to summary judgment of non-infringement where it shows that the 'patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by the structure of the accused devices.'"  *Takeda Pharm. Co. v. Impax Laboratories, Inc.*, 2013 WL 2384240 at *13 (N.D. Cal. May 30, 2013) (citing *Johnston*).

### (b)    Application of the Legal Standard

Here, each of the independent claims of the '457 Patent requires use of a calculating means that compares two distance measurements and allows the game participant to determine whether he or she is moving closer to or farther away from the hidden object.  A1703-4 (claims 1, 7 and 9)  Because the Care Bear products do not employ a calculating means for any purpose, and do not make a distance measurement at two different points, the District Court correctly head that Jakks was entitled to summary judgment of non-infringement.

That is, the recited claim is not practiced by the Care Bear products as to which both signals are transmitted at the same time from the same location and thus there is no second distance for a calculating means to determine; nor is there a relative change in distance; nor is there a memory for comparing a first transmission of a signal with a second transmission of a signal.  In short, there is no calculating means to determine a relative change in two measured distances.

Conte's position is not supported by the language of Claim 9. A24.  As set forth above, the claim language limitation with respect to calculating means cannot be disregarded in this fashion.  Specifically, Conte uses ellipses (App. Br. at 25) but the simple fact is that Claim 9 provides (A13) that "said seeker unit comprising a calculating means for determining a first distance between said seeker unit and said object, a second distance between said seeker unit and said object and a

relative change in distance" and that limitation is not met by the Care Bear products.

The crux of the invention disclosed and described in the '457 Patent is a hide and seek game that determines whether the game participant is moving closer to or further away from the hidden object, and has a means of communicating such information to the participant. A1701-4; Kitchen Decl. ¶¶16, 19-21, 80. A258-59, 268-69. This is accomplished by taking a first measurement, a second measurement, and using a calculating means to compare the two measurements. Kitchen Decl. 20-22. A259-60.

It is undisputed that the Care Bear products do not have the capability of comparing two measurements, and no calculating means to determine whether two measurements between the bear and Finder Unit are closer or farther. Kitchen Decl. ¶¶59-60, 76-77, 79-85. A265-66, 268-70. There are many reasons for this conclusion: the Care Bear products (1) do not measure distance, only relative proximity consisting of three fields, FAR (more than 25 feet between the bear and the finder unit), NEAR (2 feet to 25 feet), and CLOSE PROXIMITY (1 to 2 feet). (*Id.* ¶46); (2) have no memory chip and do not "remember" the previous proximity measured (*Id.* ¶¶60, 83); (3) generate clues based on a current measurement of proximity within a range, without reference to any other measurement (*Id.* ¶¶59, 82); (4) do not have clues that change if the distance between the transmitter and

receiver remains within a single field of measurement (*Id.* ¶¶64-76); and

(5) contain no calculating means to determine distance.  (*Id.* ¶¶79-84).  A265-69.

Because all the independent claims of the '457 Patent require two measurements to be taken and compared before the device offers the participant clues as to the hidden object, and because it is undisputed that the Care Bear products do not have that functionality, the judgment of non-infringement should be affirmed.

Conte ignores the controlling language of the District Court's opinion in its presentation.  Thus, Conte refers to a user being "informed every time he or she moves of his or her distance from the doll".  App. Br. at 25.  The Court, however, relied on the correct statement that Claim 9 involves a device which "determines a first distance between a receiver and a transmitter, a subsequent distance between the receiver and a transmitter, and whether the second distance is greater or less than said first distance."  A13.

Notwithstanding Conte's bald claim that the proximity determination of the Care Bear products creates a fact issue (App. Br. at 26), there is no basis for concluding that this practices the limitation of Claim 9.[4]

---

[4]    Conte's discussion of the alleged infringement of the Lebensfeld patent (App. Br. at 27-28) is a pure red herring.  It is not relied on by the Court in its finding of non-infringement.  A13.

### 2.    There Is No Infringement By Way of Equivalents

### (a)    Legal Standard

Where, as here, there is no literal infringement, a plaintiff may prevail under the doctrine of equivalents only if the accused device performs "substantially the same function in substantially the same way to obtain substantially the same result" as the patented device. *Brocade Communications Systems, Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1201 (N.D. Cal. 2012) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997)). This analysis must be performed on a claim-by-claim basis. *Abbott Laboratories v. Sandoz, Inc.*, 566 F.3d 1282, 1296 (Fed. Cir. 2009); *Nazomi Communications, Inc. v. Nokia Corp.*, 2013 WL 3146796 at *4 (N.D. Cal. Jun. 18, 2013) (in assessing non-infringement under the doctrine of equivalents, an element-by-element analysis is required); *Sanofi-Aventis Deutschland GMBH v. Genetech, Inc.*, 2011 WL 839411 at *5 (N.D. Cal. Mar. 11, 2011), *aff'd*, 473 Fed. Appx. 885, 890 (Fed. Cir. 2012) (analysis as to each claim of the patent). Thus, a generalized assertion that the accused device functions in the same manner, without evidence that each of the elements of the claimed patent are infringed by way of equivalents, is insufficient to defeat a claim of non-infringement. *Brocade Communications*, 873 F. Supp. 2d at 1201. Conte's argument (App. Br. at 29) is thus entirely deficient because it contains no such analysis.

**(b)    The Care Bear Products Do Not Function In The Same Manner As The '457 Patent**

As more fully set forth above, not only do the Care Bear products not replicate the technology claimed in the '457 Patent, they also do not perform the same function in the same manner, or achieve the same result.  Cf. Brocade Communications, 873 F. Supp. 2d at 1201.  An analysis of the relevant independent claims confirms this.

**(i)    Function**

All of the independent claims of the '457 Patent disclose a device that performs a first and second measurement, and calculates the difference in distance between the measurements to determine whether the game participant is moving closer to, or farther away from, the hidden object.  A1703-4.  As established above, the Care Bear products do not perform this function, but rather generate clues based on a range of proximity at a given time, rather than a difference in absolute distance.  Kitchen Decl. ¶¶59-60, 77, 83.  A265-66, 268, 269.  The Care Bear products have no memory and cannot compare the current measurement of proximity to the previous one.  *Id.*  They also cannot differentiate between distances within the FAR and NEAR ranges.  *Id.* at 77.  A268.  Finally, the Care Bear products do not contain, and therefore cannot utilize, a calculating means to compare measurements, as required by claim (9) of the '457 Patent.  *Id.* ¶¶79, 82, 84.  A268-70.

### (ii)    Manner

The Care Bear products measure the signal strength of the transmitted RF signals, and give clues based on a range of proximity.  Kitchen Decl. ¶¶46, 57. A263-65.  This method is not disclosed in the '457 Patent, which recites measurement of absolute distances between the transmitter and receiver, and use of a calculating means to generate feedback as to whether the participant is getting closer to or moving farther from the hidden object.  A1701-4.  The Care Bear products do not distinguish between distances within a proximity range (*i.e.*, FAR or NEAR).  *Id.* ¶76.  A268.  The Care Bear products also do not employ a calculating means to compare measurements, as disclosed by the '457 Patent.  *Id.* ¶¶60, 77, 79, 82.  A266, 268-69.  As such, the Care Bear products do not infringe by way of equivalents because the manner by which those products provide the participant with clues as to the location of the hidden object is very different from the manner by which the patented invention provides such clues.

### (iii)    Result

While the goal of the Care Bear products is to give the participant useful information to enable the participant to locate the hidden object, such result is not identical to, or substantially the same as that claimed by the '457 Patent.

To distinguish itself from the prior art (and presumably, to enable the inventor to receive a patent), the '457 Patent discloses an enhancement to

traditional "hide and seek" games, and even "hide and seek" games that provide electronic clues, by introducing functionality that provides the game player with clues as to whether he or she is moving closer to or farther away from the hidden object. Kitchen Decl. ¶¶15-16. A258. This enhancement is conspicuously absent from the Care Bear products leading to the conclusion that the result that purports to distinguish the patented device from other existing inventions is not replicated by the Care Bear products. Therefore, as a matter of law, they do not achieve the highly specific result that is unique to the patent.

Accordingly, because a claim-by-claim analysis reveals that the Care Bear products are not substantially similar to the patented device in terms of function, method and result, the district court's finding of no infringement by way of equivalents should be affirmed.

Conte's cursory analysis with its conclusory claim that the differences with respect to the calculating means element are "insubstantial and effectively yield the same result" (App. Br. at 30) contains no substance, is not supported by any cited authority and was properly rejected by the district court. A13.

**D.    The District Court Properly Rejected Conte's Triple Overtime Motion for Leave to Amend**

The District Court noted that the motion for leave to amend came at "this late hour" (A15). In fact it was months after the conclusion of discovery, almost

two months after briefing of the summary judgment motions (A1691-2) (A17) and would add "two entirely new causes of action that are not direct infringement and require substantively different analyses" (A15). Accordingly, it was clearly prejudicial. *SAES Getters P.p.A.v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) ("[T]he Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'"). As stated in *In re Circuit Breaker Litig.,* 175 F. R. D. 547, 551 (C.D. Cal. 1997), the "resulting prejudice to the opposing party is by far the most important and most common reason for upholding a district court's decision to deny leave to amend."

Moreover, the proposed amendment insofar as it concerned Claim 1 was properly held to be futile because Conte "cannot overcome the obviousness of Claim 1 or Defendant's non-infringement of Claim 1". A16.

In response, Conte merely rehashes its arguments with respect to obviousness and non-infringement but makes no showing of error.

In any event, as noted above, this Court is bound to a deferential standard of review (*Cooter & Gell, supra*) and the District Court's ruling was certainly within the permissible range of conclusions and thus should not be disturbed.

## CONCLUSION

For the reasons set forth above, Jakks respectfully submits that the District Court's judgment should be affirmed in its entirety.

Dated:        March 24, 2014

Respectfully submitted,

FEDER KASZOVITZ LLP


By:___/s/ Jonathan Honig_____
        Jonathan Honig
845 Third Avenue
New York, NY 10022
(212) 888-8200
jhonig@fedkas.com

*Attorneys for Defendant-Appellee*

Form 30

FORM 30. Certificate of Service

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   March 24, 2014
by:

    ☐ US mail
    ☐ Fax
    ☐ Hand
    ☒ Electronic Means
       (by email or CM/ECF)

Jonathan Honig                          /s/ Jonathan Honig
Name of Counsel                         Signature of Counsel

Law Firm   Feder Kaszovitz LLP

Address    845 Third Avenue

City, State, ZIP   New York, NY 10022

Telephone Number   (212) 888-8200

FAX Number   (212) 888-7776

E-mail Address   jhonig@fedkas.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

Form 19

**FORM 19. Certificate of Compliance With Rule 32(a)**

---

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☒   The brief contains [ 7,659          ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐   The brief uses a monospaced typeface and contains [ *state the number of* ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☒   The brief has been prepared in a proportionally spaced typeface using
[ WORD 2003                        ] in
[ 14 pt. Times New Roman      ], or

☐   The brief has been prepared in a monospaced typeface using
[     *state name and version of word processing program*     ] with [
[     *state number of characters per inch and name of type style*     ].

_____/s/ Jonathan Honig_____
(Signature of Attorney)

_____Jonathan Honig_____
(Name of Attorney)

_____Appellee_____
(State whether representing appellant, appellee, etc.)

_____March 24, 2014_____
(Date)

---

Reset Fields